### 5890.　TISON v. JEMISON & CO.

The evidence being sufficient to have authorized a verdict for the plaintiff, the court erred in granting a nonsuit.

DECIDED JUNE 11, 1915.

Complaint; from city court of Thomasville—Judge W. H. Hammond. June 16, 1914.

The action was by D. A. Tison against J. B. Jemison & Co., a corporation. The petition alleges, that the defendant "is indebted to plaintiff in the sum of $55.29, besides interest at the rate of seven per cent. per annum from August 1, 1913, this being the balance due plaintiff for forty-eight pieces, 2½x12½x37, 10176 feet of lumber, at $26.00 per thousand, less payment of $209.20;

which said car-load of lumber was shipped by plaintiff to defendant on the 19th day of June, 1913, and by it received and accepted," and that the defendant neglects to pay said amount due, though payment has been demanded. At the conclusion of the evidence introduced by the plaintiff, the defendant moved a nonsuit, on the ground that the plaintiff had failed to prove his case as alleged, and that the plaintiff testified that the original order was given by the defendant to the firm of Cobb & Tison and by them accepted. The court sustained the motion, and the plaintiff excepted.

*Roscoe Luke, Hendricks & Hendricks,* for plaintiff.

*Theodore Titus,* for defendant.

BROYLES, J. The plaintiff's evidence showed the following facts: Cobb & Tison, a firm composed of D. W. Cobb and D. A. Tison, were engaged in the sawmill business prior to June 9, 1913, and, while they were so engaged, Order No. 1164, for a car-load of lumber, was placed with the firm by the defendants. The time within which the firm was to furnish this lumber expired. The plaintiff, before the expiration of the time limit in the order, and immediately after the expiration thereof, endeavored to get his partner to join him in the purchase of a bill of lumber, and to ship it, or to permit the plaintiff, for the firm, to ship it to the defendant. Cobb refused to do this, and on June 9, 1913, the firm of Cobb & Tison was, by mutual consent, actually dissolved, though the terms of the dissolution were not reduced to writing and signed by the members of the partnership until June 23, 1913. The plaintiff, after he had failed to get his partner to agree to purchase the lumber, and after the firm of Cobb & Tison had dissolved on June 9, 1913, and after the time limit for furnishing the order had expired, went, as an individual, to one T. H. T. Sutton and purchased the car-load of lumber in person, and shipped it out to the defendant as the plaintiff's property, on June 19, 1913. Defendant accepted the lumber, and billed it out in accordance with the invoice exhibited; and afterwards (on June 23, 1913) the terms of the dissolution of partnership of Cobb & Tison were reduced to writing. The invoice is as follows:

"Invoice 4430.　　　　　　　　　　　　　　　　　Order No. 1164

Mr. D. A. Tison, Adel, Ga. Sold to J. B. Jemison & Company, Thomasville, Ga.

Shipped to Atlanta, Ga.                    Car initial CC&O
Price f. o. b. Mill                         Car No. 20319
48 pcs 5½x12½x37, 10176' at $26.00    $264.58
Corrected invoice."

The plaintiff further testified, that he sold J. B. Jemison & Co. the car-load of lumber sued for; that they paid to him 80 per cent. of the purchase-price of the lumber; that he had made demand for the balance due but defendant refused to pay him, notwithstanding it was owing to him and past due; that the order exhibited to him and identified was the original order placed with the firm of Cobb & Tison, who, at the time the order was placed and accepted, were engaged in the sawmill business; that they were unable to cut the lumber and fill the order within the time limit therein specified; he was unable to say whether the writing exhibited to him, which was claimed by defendant to be a copy of the contract of dissolution of Cobb & Tison, was correct, for the reason that he did not have the original with which to compare it, he having mailed his original contract to his counsel; that he purchased the car-load of lumber as an individual, to protect himself against any damage flowing to defendant and for the purpose of making what profit there was in the car-load of lumber; that he was a member of the firm of Cobb & Tison, and that the order for the car-load of lumber in question was given to Cobb & Tison; that J. B. Jemison & Co. did not buy the car-load of lumber from him, and did not give an order to him individually, and that there was no contract between himself and J. B. Jemison & Co.; that when the dissolution of the firm of Cobb & Tison was reduced to writing, it was therein specified that all monies due the firm were to be paid to Cobb, but that he did not intend to include the money due for this car-load of lumber in this agreement.

The plaintiff identified the following letters received from the defendant: (1) Letter dated July 23, 1913, addressed to D. A. Tison, Adel, Ga., as follows: "Replying to your letter of the 22d, will state that we have not had report on CC&O 20319 shipped by you to N., C. & St. L. Ry., but you may rest assured the very day we receive this report in our office, we will be glad to send you balance due. [Signed] J. B. Jemison & Co." (2) Letter from J. B. Jemison & Co. to D. A. Tison, dated September 9, 1913, as follows: "Replying to your letter of the 4th, in

reference to settlement for the car-load of lumber, will say we have passed a good many letters back and forth, both with you and with Mr. Cobb. He seems to make one argument and you another one; and both of you claim to be right in the matter. This, of course, puts us where we really don't know what to do, and the only thing that we can see that we can suggest is that you and Mr. Cobb get together and arrange between yourselves a satisfactory settlement of this matter, and both of you write us a letter agreeing on the same thing, and we will send a check to whoever both of you say. This is about the only way we see that it will be possible· for us to arrange the matter to protect ourselves." (3) Letter from J. B. Jemison & Co. to D. W. Cobb and D. A. Tison, dated August 25, 1913, as follows:· "We have to-day received final report covering car lumber CC&O 20319, and the same has gone through as billed. We are ready to pay the balance due on this car—$55.29, but we are not sure as to whom this should be sent. Our files show that ·on June 28th, Mr. Cobb wrote us that the firm of Cobb & Tison had been dissolved, and an agreement signed by them, he to receive all monies due the firm of Cobb & Tison. On July 12th, our files show that we received a letter from Mr. Tison asking that we send him report covering this car and balance due. We are ready to make payment, but to whom shall check be sent?" (4) Letter from J. B. Jemison & Co. to Hendricks & Hendricks, attorneys at law, Nashville, Ga., dated September 12, 1913, as follows: "We are in receipt of your letter of September 9th, in reference to the balance we are due Tison & Cobb, on a car of lumber. We also have a letter from Mr. Tison, advising that he has placed this matter in your hand for collection. We do not deny this account in any way; in fact, we not only admit that we owe this money, but we are anxious to pay it to the proper man at once, and ·for some time have been endeavoring to find out who that man is. The trouble is we bought this car of lumber when the firm of Tison & Cobb was in existence, and between the time that the lumber was purchased and the balance due on the shipment became due, the firm of Tison & Cobb, it seems, was dissolved, and now they are both writing us letters, claiming that the balance on the shipment is due to each of them. All we want is to get an agreement between the two, as to whom the money shall be paid to, and whenever we get both of them to agree as to how the

check should be made out, and to whom, the money shall be paid. We will be very much pleased to pay the account, but wish to advise you that we do not propose to do it until that agreement, is reached and sent us in writing by them both. We wrote Mr. Tison to this effect under date of Sept. 9th. Mr. Tison makes one argument and Mr. Cobb another, and the only way we can make ourselves safe is to have them both agree as to what disposition should be made of the money. When they mutually agree on this, and write us to that effect, we will not only pay the balance due, but we will pay it with much pleasure, as we are anxious to get this item off of our books. Copy to Mr. Tison and Mr. Cobb." The plaintiff testified that "the letter under date of September 9, 1913, was addressed [erroneously?] to D. A. Morris at Adel, Ga., the envelope being postmarked September 9, 1913;" that this letter and envelope "was, on September 25, 1913, postmarked at Thomasville, correctly addressed to plaintiff, and thereafter received by him in due course of mail." The plaintiff having rested his case, the defendant moved a nonsuit, on the ground that the plaintiff had failed to prove his case as laid, and because the plaintiff testified that the original order was given by the defendant to the firm of Cobb & Tison and by them accepted. The court sustained the motion and granted the nonsuit, and the plaintiff excepted.

We think the granting of the nonsuit was error. The plaintiff's evidence, showing that he as an individual, and not as a member of the firm of Cobb & Tison, sold the defendant the car-load of lumber sued for; that the defendant received the lumber, and paid him (plaintiff) 80 per cent. of the purchase-price, and promised to remit him the balance; and that he had made demand for the balance due, but that the defendant refused to pay him, notwithstanding it was owing to him and past due, in our judgment made out a prima facie case. The fact that the defendant originally placed an order for this lumber with the firm of Cobb & Tison, of which firm the plaintiff was a member, is immaterial, when the evidence shows that this order was not filled by the firm, and that the time limit therein specified for filling it had expired, and that the firm of Cobb & Tison had actually dissolved before the lumber was shipped by plaintiff to the defendant, and that it was shipped by the plaintiff as an individual. The further fact that the agreement for the dissolution of the firm was not reduced to writing

until June 23, 1913, and that therein it was stipulated that all money *due the firm* was to be paid to Cobb, does not change the situation, for in the evidence it distinctly appears that the selling and the shipping of this lumber to the defendant was not a transaction of the firm, and that the balance due on said transaction by the defendant was not due to the firm, but solely to Tison, as an individual. Under this view, Cobb, the plaintiff's former partner, had no interest whatever in this transaction, and no claim on the defendant. After the time for filling the original order (given the firm of Cobb & Tison) had expired, and after the plaintiff as an individual had purchased the lumber from a third person and shipped it to the defendant, and the defendant had received, accepted, and used it, and the defendant had paid to the plaintiff 80 per cent. of the purchase-price of the lumber, and after the defendant had written a letter to the plaintiff in which it acknowledged receipt of the lumber and promised to pay the balance, and when the invoice shows that the lumber was billed by D. A. Tison at Adel, Ga., to J. B. Jemison & Co., without any reference to the firm of Cobb & Tison, the defendant will not be heard to deny its liability for this lumber. It seems to us that it would be manifestly unfair to permit the defendant to take the proceeds of this car-load of lumber and then refuse to pay the plaintiff for it. If the defendant was really in doubt whether to pay the money to Cobb or to Tison for this lumber which it had received and used, it could have paid the money into court and in its answer set forth all the facts as contended by it, and in this way the fullest protection would have been secured. We do not see how, with all of the facts testified to by the plaintiff admitted, as well as the invoice, the letters from the defendant, the payment by it of 80 per cent. of the purchase-money, and all reasonable deductions from this evidence, it can be held that the plaintiff did not make out a prima facie case.

*Judgment reversed.*